No. 98-583

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 265

296 Mont. 430

989 P.2d 39

JAMES C. KENNEDY,

Plaintiff/Respondent/Cross-Appellant,

v.

MELVIN E. DAWSON, PETER FORMANEK,

JOHN DOES 1 AND 2, and all other persons

known who claim, or might claim right, title,

estate or interest in, or lien or encumbrance

upon, the real property described in the

Complaint, or any thereof, whether such claim

or possible claim, be present or contingent,

Defendants/Appellants.

APPEAL FROM: District Court of the Fourteenth Judicial District,

In and for the County of Meagher,

The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Glenn E. Tremper and James E. Conwel, Church, Harris, Johnson &

Williams, P.C.; Great Falls, Montana

C. Thomas Cates, Burch, Porter & Johnson, P.L.L.C.;

Memphis, Tennessee

For Respondent:

Lance Lovell and Richard W. Josephson, Josephson & Fredericks;

Big Timber, Montana

Sean Smith and R. Dale Hughes, Dow, Lohnes & Alberton, P.L.L.C.;

Atlanta, Georgia

Submitted on Briefs: May 13, 1999

Decided: November 2, 1999

No

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ On June 12, 1997, James C. Kennedy filed a complaint against the Defendants in the Fourteenth Judicial District Court, Meagher County. Over a year later, the parties moved for summary judgment. Following a hearing on the motions for summary judgment, the District Court granted summary judgment in favor of Kennedy. The parties appeal from the District Court's decision. We affirm in part and reverse in part.

¶ We restate the issues presented on appeal as follows:

¶ 1. Did the Appellants waive their right to appeal when they voluntarily satisfied the District Court order without seeking a stay of execution and posting a supersedeas bond?

¶ 2. Did the District Court err when it concluded that the right of first refusal had been properly exercised?

¶ 3. Did the District Court err in awarding Dawson $100,000 pursuant to the profit sweep provision of the agreement?

¶ 4. Did the District Court err when it declined to award Kennedy his attorney's fees and costs as the prevailing party?

## FACTUAL BACKGROUND

¶ In November 1973 Melvin E. Dawson, along with his wife, sold property located in Meagher County, referred to as the "High Range," to A. C. and Shirley Warnack and Kenneth McDonald (hereinafter Warnack/McDonald). As part of this transaction, Warnack/ McDonald had also attempted to purchase additional

property owned by Dawson located on the Smith River, known as the Tenderfoot, but Dawson was unwilling to sell at that time. Instead, the Dawsons agreed to grant Warnack/McDonald a right of first refusal on the Tenderfoot as part of the transaction to purchase the High Range.

¶ This right of first refusal provided that if the Dawsons desired to sell the Tenderfoot, Warnack/McDonald shall have the right of first refusal to purchase the property on the same terms and conditions as any bona fide offer the Dawsons chose to accept. This right further provided that Warnack/McDonald shall have 20 days from the receipt of a copy of the offer within which to purchase the property on the same terms and conditions as set forth in the bona fide offer.

¶ After 1973 Dawson received numerous inquiries from potential purchasers regarding the Tenderfoot. In each instance, Dawson informed the potential purchaser of the existence of the Warnack/McDonald right of first refusal and that any offer he accepted would be subject to that right.

¶ In approximately 1991 Peter Formanek of Memphis, Tennessee became interested in acquiring the Tenderfoot from Dawson. Formanek was aware of the Warnack/McDonald right of first refusal on the Tenderfoot from the outset of his negotiations with Dawson. Beginning in 1992 Formanek made written offers to Dawson for the purchase of the Tenderfoot, but none of these offers was accepted by Dawson until 1996.

¶ In December 1993 Formanek forwarded a draft agreement to Dawson for the purchase of the Tenderfoot. This draft agreement contained two provisions, which were dubbed "the poison pill" by Formanek in a note to Dawson's counsel that accompanied the draft agreement. The first provision, which has been referred to as a profit sweep provision, provided that if the purchaser of the Tenderfoot were to resell the property in excess of the $1,000,000 purchase price within three years, Dawson would be entitled to the sale proceeds in excess of $1,000,000. The second provision provided that if the purchaser or other owner of the Tenderfoot desired to sell to anyone other than Formanek or his family within three years, Dawson would have the right of first refusal to purchase the property on the same terms and conditions.

¶ These poison pill provisions remained essentially unchanged in the various draft

agreements exchanged between Formanek and Dawson from December 1993 to December 1996, with the exception of an increase in the time period from three years to five years. In December 1996 Dawson accepted a written contract from Formanek for the purchase of the Tenderfoot.

¶ On December 27, 1996, Dawson's counsel notified Warnack/McDonald and their attorney that Dawson had accepted a bona fide offer for the sale of the Tenderfoot and that Warnack/McDonald had 20 days within which to exercise their right of first refusal. Dawson's counsel also advised Warnack/McDonald that their office had provided Dawson with the opinion that the Warnack/McDonald right of first refusal was an unreasonable restraint upon Dawson's property. In addition, the letter stated that Dawson was not waiving any right to claim that the right of first refusal was ineffective or unreasonable in the future by providing notice of the offer to Warnack/McDonald.

¶ On January 14, 1997, Warnack/McDonald's attorney informed Dawson's counsel of Warnack/McDonald's intent to exercise their right of first refusal on the Tenderfoot. This letter advised that Warnack/McDonald accepted and agreed to purchase the Tenderfoot at the price and on the terms and conditions offered in the Formanek/Dawson Agreement to Sell and Purchase Real Property. In addition, Warnack/McDonald's attorney noted that the inclusion of the provisions contained in paragraph 13 (the poison pill provisions) were an attempt to deny the Warnack/McDonald right of first refusal and were an obvious effort to dissuade purchase of the Tenderfoot by Warnack/McDonald.

¶ Immediately following Warnack/McDonald's exercise of their right of first refusal, Dawson's counsel informed the escrow company of the exercise of the right of first refusal. At the same time, Dawson's counsel directed the escrow company to accept Warnack/ McDonald's earnest money and requested return of Formanek's earnest money.

¶ On January 20, 1997, Warnack/McDonald's attorney forwarded a draft agreement along with a letter of explanation to Dawson's counsel, containing certain proposed changes to the Formanek/Dawson agreement. Warnack/McDonald's attorney specifically omitted the paragraph containing the right of first refusal to Dawson stating that it conflicted with the profit sweep provision and that it would revive the Warnack/McDonald right of first refusal making it an unworkable and circuitous

provision.

¶ More than a month later, on February 28, 1997, Dawson's counsel advised Warnack/ McDonald's attorney that the draft agreement was acceptable in its form with only a couple of changes and additions. This letter made no mention of the omission of Dawson's right of first refusal in the draft agreement. In fact, this letter indicated that in all other respects, the contract was just fine and that if Warnack/ McDonald's attorney would draft it with the suggested changes, Dawson's counsel would have Dawson execute it.

¶ On March 4, 1997, Warnack/McDonald's attorney forwarded another draft agreement, containing the suggested changes, to Dawson's counsel. On March 7, 1997, Dawson's counsel wrote to Warnack/McDonald's attorney requesting that the previously omitted right of first refusal be reinstated. Following this request, counsel for the parties exchanged correspondence discussing the propriety of Dawson's right of first refusal.

¶ In mid-March 1997 Dawson's counsel received a letter from Kennedy's attorney advising that Kennedy, a resident of Atlanta, Georgia, had been working with Warnack/McDonald to acquire the Tenderfoot. This letter identified Kennedy and set forth a settlement proposal to expedite a closing between Dawson and Warnack/ McDonald so that Kennedy could ultimately acquire the Tenderfoot from Warnack/ McDonald.

¶ Unbeknownst to Dawson or his counsel, Kennedy's attorneys in Atlanta had been communicating with Warnack/McDonald's attorney regarding the exercise of the right of first refusal in an attempt to acquire the Tenderfoot for Kennedy. As part of these communications, Kennedy agreed to pay Warnack/McDonald $100,000 upon closing if he was ultimately successful in acquiring the Tenderfoot.

¶ From mid-March through mid-April, 1997, the parties continued to prepare for closing on the purchase and sale of the Tenderfoot. At no point did Dawson's counsel object to Kennedy's involvement in the transaction. In early April 1997 Dawson's counsel requested and received a copy of a research memorandum prepared by Kennedy's attorneys analyzing the propriety of the provisions contained in paragraph 13.

¶ On April 15, 1997, Warnack/McDonald executed an assignment of their right of first refusal on the Tenderfoot to Kennedy to allow Dawson to close the transaction directly with Kennedy. On that same date, Kennedy's attorney contacted Dawson's counsel and informed them of the assignment of the right of first refusal. Subsequently, Kennedy signed the assignment on April 23, 1997, and it was recorded in the Meagher County Clerk and Recorder's Office on April 29, 1997.

¶ In the meantime, on April 11, 1997, Formanek had sent a letter, along with $20,000 in earnest money, to Dawson requesting that Dawson honor their agreement and convey the Tenderfoot to him. Formanek asserted that Warnack/McDonald and Kennedy were attempting to induce Dawson to enter into an agreement that differed from the Formanek/ Dawson agreement. Formanek emphasized the amount of time and expense he had invested in negotiating their agreement and that he had resolved to seek legal relief if the transaction could not be closed pursuant to their agreement.

¶ Dawson's counsel did not communicate with attorneys for Warnack/McDonald or Kennedy until April 24, 1997, when they notified them that Dawson had conveyed the Tenderfoot to Formanek. The reason given for the conveyance to Formanek was that Warnack/McDonald or their assigns had not unconditionally exercised their right of first refusal within 20 days from receipt of the offer.

¶ On April 30, 1997, Kennedy made a formal demand for conveyance of the Tenderfoot. On May 13, 1997, Montana counsel for Formanek formally denied Kennedy's demand for conveyance. As a result, Kennedy initiated this lawsuit against the Defendants on June 12, 1997, for ejectment, breach of contract, tortious interference, and to quiet title to the Tenderfoot.

¶ On July 7, 1998, the parties moved for summary judgment. Following a hearing on the motions for summary judgment, the District Court granted summary judgment in favor of Kennedy. In doing so, the District Court ordered that the property at issue be reconveyed from Formanek to Dawson then to Kennedy; that Kennedy pay Formanek the purchase price plus reimbursement for payment of Dawson's attorney's fees; that Kennedy pay Dawson $100,000 under the profit sweep provision of the agreement; that the remainder of Kennedy's claims be dismissed; that summary judgment be entered against Defendants on all counts; and that each party bear their own attorney's fees and costs.

¶ Following entry of the judgment, counsel for the parties met in White Sulphur Springs, Montana, on September 17, 1998, for a closing on the Tenderfoot in accordance with the District Court's judgment. Prior to this meeting and reiterated at the meeting, counsel for Dawson and Formanek informed Kennedy's attorney that they would be filing a notice of appeal and lis pendens prior to the recording of any deeds.

¶ At that point a dispute arose that resulted in the parties contacting the District Court for guidance. As a result of these discussions and in contemplation of an appeal, the parties entered into an Order of Closing setting forth an acceptable sequence of events for satisfaction of the District Court's judgment. After title was transferred to Kennedy, Formanek filed a notice of lis pendens on the property. Kennedy filed a notice of satisfaction of judgment on September 29, 1998. The parties appeal from the District Court judgment.

DISCUSSION

ISSUE 1

¶ Did the Appellants waive their right to appeal when they voluntarily satisfied the District Court order without seeking a stay of execution and posting a supersedeas bond?

¶ Kennedy has moved to dismiss this appeal on the basis that Dawson and Formanek have waived their right to appeal by voluntarily satisfying the District Court judgment. In response to this motion, Dawson and Formanek contend that they involuntarily satisfied the judgment and that as such they have not waived their right to appeal and were not required to seek a stay of execution of the judgment or post a bond.

¶ This Court has previously determined that the distinction between voluntary and involuntary satisfaction of a judgment "has meaning in ascertaining whether an appeal is barred due to waiver." *Turner v. Mountain Eng'g & Constr., Inc.* (1996), 276 Mont. 55, 63-64, 915 P.2d 799, 804-05. "[W]here payment or performance of a judgment by an appellant is involuntary, the appellant does not acquiesce to the judgment and the right to appeal is not affected." *Turner*, 276 Mont. at 61, 915 P.2d at 803 (citations omitted).

¶ Following entry of judgment in this case, it is evident from the record that all parties were cognizant of the contemplated appeal. Counsel for Dawson and Formanek had communicated this fact to Kennedy's attorney and reiterated their intent to appeal at the closing in satisfaction of the judgment. Discussion involving this very issue at the closing prompted the parties to contact the District Court for guidance on the matter. As a result of these discussions and in recognition of Dawson and Formanek's expressed intent to appeal, the parties entered into an order of closing setting forth the sequence of events for satisfaction of the District Court's judgment. After Kennedy acquired title pursuant to the judgment, Formanek filed a notice of appeal and lis pendens, effectively preserving the status quo pending appeal.

¶ The parties' course of conduct following entry of the judgment illustrates the involuntary nature of Dawson and Formanek's satisfaction of the District Court's judgment. Since their satisfaction of the judgment was involuntary, Dawson and Formanek have not waived their right to appeal.

¶ In addition, Rule 7 of the Montana Rules of Appellate Procedure provides that "[u]pon entry of a judgment or order in a civil case a party *may* apply to the district court . . . for a stay of the execution of the judgment or order." (Emphasis added). It does not require that a party seek a stay of execution. However, a party choosing not to seek such a stay runs the risk of having his appeal become moot. *See Turner*, 276 Mont. at 60, 915 P.2d at 803 (citation omitted).

¶ "The issue of mootness is separate and distinct from the question of waiver of appeal rights." *Turner*, 276 Mont. at 61, 915 P.2d at 803. In deciding whether a case is moot, this Court determines whether it can fashion effective relief. *Turner*, 276 Mont. at 61, 915 P.2d at 803 (citations omitted). In this case, this Court can fashion effective relief by ordering conveyance of the property to the prevailing party, *inter alia*. Accordingly, Kennedy's motion to dismiss this appeal is denied and we turn our attention to the substantive issues raised on appeal.

## STANDARD OF REVIEW

¶ Our standard of review in appeals from summary judgment rulings is *de novo*. *See Motaire v. Northern Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the

same evaluation as the district court based on Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## ISSUE 2

¶ **Did the District Court err when it concluded that the right of first refusal had been properly exercised?**

¶ **Dawson and Formanek contend that Warnack/McDonald's exercise of their right of first refusal was improper. Dawson and Formanek assert that despite Warnack/ McDonald's initial acceptance of the terms and conditions of the Formanek/Dawson agreement, Warnack/McDonald did not execute the agreement as proposed by Formanek and accepted by Dawson. Instead Warnack/McDonald proposed a different agreement omitting certain provisions.**

¶ **Kennedy asserts that Warnack/McDonald's initial exercise of their right of first refusal was intended to be an unequivocal acceptance of the terms and conditions of the Formanek/ Dawson agreement. However, Warnack/McDonald were not required to agree to and accept commercially unreasonable provisions contained in the Formanek/Dawson agreement in order to properly exercise their right of first refusal.**

¶ **The District Court concluded that Warnack/McDonald effectively exercised their right of first refusal on January 14, 1997, when their attorney sent a letter to Dawson and his counsel within 20 days of receipt of the offer. The District Court went on to point out that Dawson and his counsel recognized the effective exercise of the right by notifying the escrow company of such exercise and instructing it to accept Warnack/McDonald's earnest money and return Formanek's earnest money. Based**

on these undisputed facts, the District Court found that a valid and enforceable contract arose between Dawson and Warnack/McDonald for the sale of the Tenderfoot at that time.

¶ A right of first refusal does not give the rightholder the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the rightholder at the stipulated price. *See Lee v. Shaw* (1991), 251 Mont. 118, 121, 822 P.2d 1061, 1063. The preemptive right ripens into an option when the owner elects to sell, at which point, the owner has the contractual obligation to offer the property to the optionee on the same terms and conditions as the offer made to him by a third party. *See* 77 Am. Jur. 2d Vendor Purchaser § 40 (1997).

¶ However, three exceptions to the requirement for the exact matching of terms have been recognized:

First, and most obviously, the grantor of the right can waive exact matching . . . . Second, proper names need not be matched . . . . Third, the grantor of the option may not act in bad faith, which in this context means may not, for the purpose of discouraging the exercise of the right, procure from the third party terms that the grantor knows are unacceptable to the holder of the right of first refusal.

*Miller v. LeSea Broad., Inc.* (7th Cir. 1996), 87 F.3d 224, 227-28 (citations omitted). These exceptions are necessary to ensure that each party to the contract receives the benefit of his or her bargain.

¶ In addition, this Court has held that "every contract, regardless of type, contains an implied covenant of good faith and fair dealing." *Story v. City of Bozeman* (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. The Montana Legislature has set forth the standard of conduct required by the implied covenant of good faith and fair dealing: "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." § 28-1-211, MCA. "Each party to a contract has a justified expectation that the other will act in a reasonable manner . . . ." *Story*, 242 Mont. at 450, 791 P.2d at 775. Thus, so long as the conditions of the sale are commercially reasonable, imposed in good faith and not specifically designed to defeat the right of first refusal, the rightholder will be obliged to match the offer if she wishes to exercise her first refusal privilege. *See* Bernard Daskal, *Rights of First Refusal and*

*the Package Deal*, 22 Fordham Urb. L.J. 461, 464-66 (Winter 1995).

¶ **Formanek and Dawson negotiated the terms of their agreement for the purchase and sale of the Tenderfoot over a four-year period. While it is evident from the record Dawson wanted to prevent the Tenderfoot from being subdivided and prevent someone from turning around and making a quick profit, it is apparent that Formanek and Dawson specifically included provisions in their agreement to discourage Warnack/McDonald from exercising their right of first refusal. Formanek himself dubbed the profit sweep provision and right of first refusal to Dawson as the "poison pill" in a note to Dawson's counsel:**

We've made the changes you requested and tried to tighten the "poison pill" by giving Bud [Dawson] a right of first refusal to keep Warnack from buying the property for someone else. My hope in that case would be the property would revert to Bud then us.

In addition, Formanek testified in his deposition that his understanding of a poison pill was that it was something designed to deter.

¶ **In his January 14, 1997, letter advising of Warnack/McDonald's exercise of their right of first refusal, Warnack/McDonald's attorney expressed his belief that the inclusion of the poison pill provisions was no less than an attempt to deny his clients' right of first refusal and dissuade them from purchasing the property. As holders of a right of first refusal, Warnack/McDonald were well within their rights to challenge the propriety of those provisions. Counsel for Dawson voluntarily engaged in discussions with Warnack/ McDonald's attorney and later with Kennedy's attorney concerning those provisions. These discussions involving the provisions that were placed in the contract to discourage Warnack/ McDonald from exercising their right of first refusal do not impact the effective exercise of the right of first refusal. Accordingly, we conclude that the District Court did not err when it determined that the right of first refusal had been properly exercised.**

## ISSUE 3

¶ **Did the District Court err in awarding Dawson $100,000 pursuant to the profit sweep provision of the agreement?**

**¶ Kennedy contends that the profit sweep provision is only applicable to resales of the Tenderfoot; therefore, Dawson is not entitled to the $100,000 paid by Kennedy to Warnack/McDonald for the preclosing assignment of their right of first refusal. In response, Formanek and Dawson assert that the assignment properly triggered the profit sweep provision and that Kennedy conceded Dawson was entitled to the $100,000 under the profit sweep provision.**

**¶ Paragraph 13 A of the Formanek/Dawson agreement provides as follows:**

It is understood and agreed that if Buyer or any other owner of the Tenderfoot sells the Tenderfoot, *or any portion thereof, within five years following the date of closing of this transaction, the Seller shall be entitled at closing of such sale, to receive a payment in the amount, if any, by which the sale proceeds from such subsequent sale of the Tenderfoot exceeds the sum of $1,000,000.00.*

*(Emphasis added.) In addition, in his brief in support of his motion for summary judgment, Kennedy stated:*

*In Count V, defendant Dawson alleges that he is entitled to some or all of the amount that would be paid to Warnack/McDonald if Kennedy acquired the Tenderfoot. Kennedy does not dispute that if he obtains title to the Tenderfoot, Dawson would be entitled to some amount under paragraph 13(A) of the sales contract (the profit sweep provision). There is a factual dispute as to the amount to which Bud Dawson would be entitled, but if that is the only issue remaining in the case after summary judgment in favor of Kennedy, the issue can undoubtedly be negotiated amicably to resolution.*

*Then, at the hearing on the motions for summary judgment, Kennedy's attorney stated the following with regard to the $100,000 payment:*

*Now, as we noted at the end of our initial summary judgment brief, Mr. Kennedy paid money to Warnack and McDonald for them to have the right -- for him to have the right assigned to him. Essentially it was $100,000.00. Now, if that comes under the profit sweep provision, I think we can all work that out. I mean I suspect that I can call my client and have that $100,000.00 wired up here today for the benefit of Mr. Dawson.*

No

*¶ Warnack/McDonald as owners of a right of first refusal in the Tenderfoot eventually sold that right to Kennedy for $100,000. This was in excess of the $1,000,000 purchase price ultimately paid by Kennedy to Formanek for the Tenderfoot. Therefore, as recognized by Kennedy, Dawson was entitled to payment of $100,000 under the profit sweep provision of the agreement. Accordingly, we conclude that the District Court did not err when it ordered Kennedy to pay Dawson $100,000.*

## ISSUE 4

*¶ Did the District Court err when it declined to award Kennedy his attorney's fees and costs as the prevailing party?*

*¶ Kennedy asserts that he is entitled to an award of his attorney's fees and costs under the contract as the prevailing party. Formanek and Dawson argue that Kennedy is attempting to enforce his rights as an assignee under the 1973 contract for deed, which does not contain an attorney's fees provision. Formanek and Dawson also claim that since Kennedy was required to pay Dawson $100,000, there is no prevailing party in this case.*

*¶ Paragraph "14.B." of the agreement between Formanek and Dawson specifically addresses the award of attorney's fees and costs to the prevailing party:*

<u>Attorney Fees</u> *If there is any litigation between the parties arising out of or in connection with this agreement or the Tenderfoot, then the prevailing party in the litigation shall be entitled to receive an award of the costs of the action, together with a reasonable attorney fee, as allowed by the court hearing the litigation, in addition to any other relief awarded.*

*"Montana has long followed the rule that attorney's fees will not be awarded to a prevailing party absent statutory or contractual authority for such an award." Dorwart v. Caraway, 1998 MT 191, ¶ 133, 290 Mont. 196, ¶ 133, 966 P.2d 1121, ¶ 133 (citing Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 429, 913 P.2d 641, 650). This Court has also held that "there is no prevailing party where both parties gain a victory but also suffer a loss." Parcel v. Myers (1984), 214 Mont. 220, 224, 697 P.2d 89, 91-92 (citation omitted).*

*¶ Kennedy instituted this action against Formanek and Dawson to have a court determine ownership of the Tenderfoot. The District Court awarded summary judgment in favor of Kennedy and against Formanek and Dawson. As part of Kennedy's award of summary judgment, he was required to pay Dawson $100,000 pursuant to the profit sweep provision of the agreement. As such, this payment cannot be considered a loss to Kennedy; it was an obligation Kennedy was required to satisfy under the agreement. Therefore, we conclude that the District Court erred when it failed to award Kennedy, as the prevailing party, his attorney's fees and costs pursuant to the agreement.*

*¶ Accordingly, we affirm in part and reverse in part the judgment of the District Court. We affirm the District Court's determination that the right of first refusal had been properly exercised and that Kennedy was required to pay Dawson $100,000 under the profit sweep provision of the agreement. We reverse the District Court's order declaring that each party bear their own costs and attorney's fees and remand this cause to the District Court for a determination of an award of costs and reasonable attorney's fees to Kennedy as the prevailing party in accordance with the agreement.*

*¶ Affirmed in part, reversed in part and remanded.*

*/S/ JIM REGNIER*

*We Concur:*

*/S/ J. A. TURNAGE*

*/S/ W. WILLIAM LEAPHART*

*/S/ WILLIAM E. HUNT, SR.*

*/S/ KARLA M. GRAY*