No. 01-443

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 158

TUNGSTEN HOLDINGS, INC.,

        Plaintiff/Appellant,

    v.

JERRY L. OLSON and SANDRA L.
OLSON,

        Defendants/Respondents.


APPEAL FROM:    District Court of the Nineteenth Judicial District,
                    In and for the County of Lincoln,
                    The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Amy N. Guth, Libby, Montana

        For Respondents:

                James C. Bartlett, Kalispell, Montana


                            Submitted on Briefs: January 10, 2002

                                    Decided: July 16, 2002

Filed:

                               _____
                                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Beginning in the early 1970s and extending over several years, Whispering Pines Development Inc. (Whispering Pines) bought substantial acreage in Lincoln County, Montana, from Thelma and Ross McKenzie (McKenzies) with an intention to subdivide the property into five-acre parcels for sale and development.  To facilitate this development, it obtained from the McKenzies an easement allowing Whispering Pines to, among other things, use and expand existing roads to up to sixty feet in width and to cut and create new sixty-foot wide roads.  Whispering Pines subsequently chose not to develop the property and began selling the property in twenty- and forty-acre parcels.  In 1987, it sold a forty-acre parcel to Jerry and Sandra Olson (Olsons).  Whispering Pines retained a fifteen-foot logging road easement (Road Easement) through the Olsons' property by which to access property Whispering Pines held by contract to the north of the Olson property.  Whispering Pines subsequently bought the parcel north of the Olsons and then sold it to Tungsten Holdings, Inc. (Tungsten).

¶2     Tungsten sued the Olsons, claiming an implied or express right to use the Road Easement over the Olsons' property.  The Olsons countered that Tungsten had no easement right.  The District Court held that Tungsten was not entitled to either an implied or actual easement over the Olsons' property.  Tungsten filed a timely appeal.  We affirm.

## ISSUES

¶3     A restatement of the issue in this case is whether the District Court erred when it concluded that Tungsten did not have an implied or express easement over the Olsons' property.

## FACTUAL BACKGROUND

¶4     The parties presented extensive facts pertaining to their dispute.  This Opinion recites only

2

those facts that are germane to our decision.

¶5     Beginning in October 1973 and extending over several years, Whispering Pines purchased twenty-one forty-acre parcels of contiguous property from the McKenzies under a Contract for Deed (Contract). Whispering Pines intended to subdivide each of the twenty-one parcels into five-acre parcels and sell them for development. The Contract granted an easement to Whispering Pines and obligated the McKenzies to allow Whispering Pines to use and expand all existing roads, to have a survey conducted, and to create any new roads warranted by the survey. Twenty-one deeds, numbered by parcel, were signed and placed into escrow and released to Whispering Pines at the time the corresponding parcel was paid off. None of the deeds referenced the easement arrangement included in the Contract.

¶6     After the Contract was executed, the Contract was recorded at the Clerk and Recorder's Office of Lincoln County. Also, a copy of the Contract, the signed Warranty Deeds for each parcel and a Quit Claim Deed for each parcel were placed in escrow. The McKenzies retained legal ownership of each parcel until Whispering Pines paid it off and did not assign their rights or obligations under the Contract to anyone else for the duration of the Contract.

¶7     The pertinent language in the Contract reads:

> It is further understood and agreed that at the present time, there are existing roads on all of the property presently owned by the Sellers, and the Sellers herein grant an easement to the Buyer to use said existing roads and to enlarge said existing roads to sixty (60) feet in width.

> It is further agreed that Buyer will be surveying the conveyed property and the Sellers herein grant an easement to Buyer herein to cut and to create new roads sixty (60) feet in width where the survey so warrants it. This covenant shall run with the land herein described and said easements shall be appurtenant to all of the property

3

herein conveyed by the Sellers at the time of the execution of this Contract.

¶8 At some time after executing the Contract, Whispering Pines decided not to subdivide the purchased property. It began to sell twenty- and forty-acre paid-off parcels.

¶9 In June 1987, Whispering Pines paid off one of the few remaining parcels under Contract and received the Warranty Deed for it. Whispering Pines immediately sold this forty-acre parcel to the Olsons. The Warranty Deed given to Whispering Pines by the McKenzies described the land as follows:

> NW1/4SW1/4 of Section 32, Township 35 North, Range 26 West, M.P.M., Lincoln County, Montana. To have and to hold the same premises, with their appurtenances unto the said Grantee, its heirs and assigns, forever. And the said Grantors do hereby covenant to and with the said Grantee that they are the owners in fee simple of said premises; that they are free from all incumbrances, and that they will warrant and defend the same from all lawful claims whatsoever.

¶10 Again, as indicated above, this Warranty Deed to Whispering Pines from the McKenzies contained no reference to any easements granted or conveyed by the Contract but rather indicated that the property was free of any incumbrances. By contrast, the legal property description included in the Warranty Deed given to the Olsons by Whispering Pines on the same day, read:

> The NW1/4SW1/4 of Section 32, Township 35 North, Range 26 West, M.P.M., Lincoln County, Montana.
> **EXCEPTING AND RESERVING** all oil, gas, coal and mineral rights whatsoever in and wnder [sic] and that may be produced therefrom; Together with **a 15 foot private road and utility easement on and across the presently existing 15 foot private road running along the East boundary.** (Emphasis provided).
> TO HAVE AND TO HOLD the said premises, with their appurtenances unto the said Grantee, and the said Grantor does hereby covenant with the Grantee that it will warrant and defend the same from all lawful claims whatsoever.

¶11 At the time Whispering Pines conveyed this parcel of property to the Olsons, it had the parcel to the north of the Olsons' property reserved under the Contract but had not yet paid it off. It retained a utility and egress/ingress easement along the existing fifteen-foot Road Easement. Both

4

the Olsons' property and the Road Easement retained by Whispering Pines were accessed by a Forest Service road running through property owned by the Olsons' neighbor to the east, Jean Nordahl (Nordahl). Subsequent to the Olsons' purchase, the Forest Service abandoned the access road through Nordahl's property and Nordahl blocked continued use of the abandoned road by "dead-mounding" it at his property line with the Olsons. Shortly thereafter (in 1989 or 1990), the Olsons constructed a new driveway that was exclusively on their property. The Olsons' driveway thus became the only way to access the Road Easement. Additionally, after Nordahl blocked his end of the access road, the Olsons erected a fence in the same area to prevent the free movement of open range cattle. The fence was erected in 1993 or 1994.

¶12 In 1993, Tungsten purchased substantial acreage from Whispering Pines including the parcel to the north of the Olsons' property. Tungsten did not provide a deed nor a contract of sale to the District Court for review. Tungsten argues that it has an implied or express right to access its property to the north of the Olsons' property by way of the Road Easement. It bases its claim to this easement right on the language in the contract between Whispering Pines and the Olsons. The Olsons argue that Tungsten submitted no evidence to the District Court or this Court that grants Tungsten such a right of easement over their property. Additionally, the Olsons argue that Tungsten has access to its own property via other routes that do not require traveling over the Olson property.

**STANDARD OF REVIEW**

¶13 This Court reviews a district court's findings of fact to determine whether they are clearly erroneous. *Engel v. Gampp*, 2000 MT 17, 298 Mont. 116, 993 P.2d 701. We have established a three-prong test to determine when factual findings are "clearly erroneous." We first determine whether the findings of fact are supported by substantial evidence. Next, we decide whether the fact

5

finder misapprehended the effect of the evidence, and lastly, we ascertain whether a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *State Comp. Mut. v. Lee Rost Logging* (1992), 252 Mont. 97, 102, 827 P.2d 85, 88. **Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."** ***Wunderlich v. Lumbermens Mut. Cas. Co*. (1995), 270 Mont. 404, 408, 892 P.2d 563, 566 (citing *Miller v. Frasure* (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261).**

¶14    We review a district court's conclusions of law to determine whether they are correct. *Steer Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## DISCUSSION

**¶15    Tungsten argues that the District Court's Findings of Fact were erroneous and were not supported by substantial evidence. Moreover, Tungsten contends that if certain findings were supported by the evidence, the District Court misapprehended the effect of the evidence, and misapplied the law as to those issues. Additionally, Tungsten maintains that the court's conclusions of law were incorrect. Specifically, Tungsten asserts that it was error for the District Court to conclude that the provisions in the Contract for Deed merged into the deeds Whispering Pines obtained from the McKenzies. They also object to the District Court's conclusion that Tungsten failed to prove that any conveyance of real property by Whispering Pines to Tungsten could have attached any right to the use of the easement across the Olsons' property.**

¶16    We will first address the District Court's challenged legal conclusion that the contract for

6

deed merged into the deed at the time the deed was delivered from the McKenzies to Whispering Pines. A contract for deed is, by definition, an executory contract. *See Dobitz v. Oakland* (1977), 172 Mont. 126, 561 P.2d 441. It is an agreement by a seller to deliver the deed to property when certain conditions have been met, usually when the buyer has completed making payments to the seller. In the case before us, the Contract anticipated Whispering Pines buying twenty-one separate and defined parcels to be paid for by Whispering Pines over time. Because the McKenzies would retain legal ownership of each parcel until it was paid for, the McKenzies gave Whispering Pines a use easement in order that Whispering Pines could have necessary access to the property to develop it. The McKenzies also signed and placed into escrow 21 warranty deeds, none of which contained any reference to the easement. As a result, each time Whispering Pines paid off a parcel and received the deed, the terms of the Contract merged into that deed, and the terms of the Contract no longer applied to the deeded parcel.

¶17    "It is a general tenet of contract law that all provisions in a contract for sale of real property are merged into the deed. (Citation omitted). Thus, when a deed has been executed, the purchaser's rights are generally founded in the deed covenants, not the executed contract. (Citation omitted)." *Urquhart v. Teller*, 1998 MT 119, 288 Mont. 497, 958 P.2d 714. **As Tungsten points out, however, there are exceptions to this legal tenet. One such exception is that merger does not occur when the parties intended that some term or agreement in the contract for sale was collateral to the sale and not meant to merge with the deed.** *Urquhart*, **¶28.**

¶18    Examples of contractual arrangements that would not necessarily merge with the deed are restrictive covenants on land use or construction by the buyer (*Thisted v. Country Club Tower Corp.*

7

(1965), 146 Mont. 87, 405 P.2d 432, overruled, on other grounds, by *Grey v. Billings* (1984), 213 Mont. 6, 689 P.2d 268), or a right to repurchase the property granted to the seller by the buyer (*Gerald Elbin, Inc. v. Seegren* (Ill. 1978) 378 N.E.2d 626). A distinction between these exceptions and the easement right granted by the McKenzies to Whispering Pines is that the exceptions listed above could only be performed <u>after</u> delivery of the deed to the buyer. *Gerald Elbin, Inc.,* 378 N.E.2d at 628. **In the case before us, the permission to access the property was only necessary <u>before</u> Whispering Pines owned the property outright. Once Whispering Pines owned any given parcel, it no longer needed the McKenzies' permission to use or expand the roads.**

¶19 Moreover, under the law, the parcels of property owned by the McKenzies and on which Whispering Pines had the right to use the roads were "servient tenements." Any time the party who owns an easement right acquires legal ownership of a servient tenement, the easement associated with that parcel is extinguished. Section 70-17-105, MCA (A servitude cannot be held by the owner of the servient tenement.); Section 70-17-111(1), MCA (A servitude is extinguished by the vesting of the right to the servitude and the right to the servient tenement in the same person.) *See also Mularoni v. Bing*, 2001 MT 215, ¶ 29, 306 Mont. 405, ¶ 29, 34 P.3d 497, ¶ 29. Therefore, each time Whispering Pines paid off a parcel and received the deed, the easement it had obtained over that parcel from the McKenzies prior to the purchase was eradicated. This is not only a correct legal result but is a logical outcome under these circumstances and appears to be the intention of the parties.

¶20 Tungsten also complains that the District Court erroneously concluded that it had "introduced no evidence of any conveyance of any real property by Whispering Pines to [Tungsten] which could

8

have had attached any right to the use of the easement across [the Olsons'] 40-acre tract." Tungsten's argument that the District Court erred fails to acknowledge the court's concern: Tungsten offered no proof of ownership of record. Tungsten simply did not produce evidence of ownership of record by means of the simplest and most logical of documentation--its deed. The deed would have provided the relevant information required by the court to determine with what rights and under what obligations Tungsten acquired the parcel north of the Olsons from Whispering Pines. Without the deed, there was no evidence that Whispering Pines conveyed or intended to convey any easement over the Olsons' property to Tungsten. Moreover, Whispering Pines had no other easement it could have conveyed since the easement rights it held from the McKenzies while paying off the property had extinguished and no longer existed at the time Whispering Pines sold to Tungsten. Failure to provide the deed to the court is tantamount to an admission that its deed from Whispering Pines did not support Tungsten's claim to easement rights over the Olsons' property. Furthermore, the evidence that Tungsten has access to its property that does not require it to traverse the Olsons' property was undisputed and compelling. **Thus, there was no evidence to support a claim for easement by necessity.**

**¶21   With regard to Tungsten's complaints that the District Court's findings of fact are erroneous, it is unnecessary to recite each challenged finding of fact because our review of the findings and the record in this case does not convince us that the findings are erroneous, or if any of them are in error, that such error would support reversal. As we have held on numerous occasions, we will not reverse the district court for erroneous factual findings unless the error prejudices an affected party and the erroneous finding is necessary to support the district court's ruling.** *Keil v. Ferguson*

9

**(1990), 246 Mont. 344, 805 P.2d 1334 ("Erroneous findings of fact that are not necessary to support the judgment of the trial court are not grounds for reversal.")(Citations omitted).**

## CONCLUSION

¶22     The District Court's Findings of Fact that are pertinent to our decision here are supported by substantial evidence and, therefore, are not clearly erroneous.  The District Court's legal conclusion that the Contract merged into the title of Whispering Pines upon the recording of the Warranty Deeds was correct.  The District Court's legal conclusion that Tungsten did not submit any evidence that Whispering Pines had conveyed any easement over the Olsons' property to Tungsten at any time was correct.  For the reasons set forth in this Opinion, we affirm the District Court.


/S/ PATRICIA COTTER


We Concur:


/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER