No. 01-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 15N

ROBIN STREET,

Plaintiff and Respondent,

v.

BENNY F. ZABLOTNEY and
CLIFTON ZABLOTNEY,

Defendants and Appellants.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DV-97-474(A)
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Katherine P. Maxwell, Johnson, Berg, McEvoy & Bostock, Kalispell,
Montana

For Respondent:

Kenneth E. O'Brien, Hash & O'Brien, Kalispell, Montana

Submitted on Briefs: January 10, 2002

Decided:  February 11, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Robin Street (Street) brought this action in the District Court for the Eleventh Judicial District, Flathead County, to recover damages for the diversion of the Whitefish River near his property.  The District Court found in favor of Street concluding that Benny  Zablotney and his son, Clifton Zablotney, (the Zablotneys) took actions in the Whitefish River that changed its course and thereby damaged Street.  From this judgment, the Zablotneys appeal.  We affirm.

¶3    The Zablotneys raise the following issue on appeal:  Did the District Court err in determining that the Zablotneys diverted the main channel of the Whitefish River thereby damaging Street's downstream pump site?

**Factual and Procedural Background**

¶4    Street and the Zablotneys each own parcels of real property located on opposite sides of the Whitefish River.  The boundary between the Zablotneys' property and Street's property is the "main channel" of the Whitefish River. The Whitefish River is an "E4-type stream" which means that it is highly sinuous, fairly narrow and deep, has a low slope, and is not

2

confined in that it spreads out over a wide area of a floodplain. The river has three channels in the area near the Zablotney and Street properties, which the District Court referred to as the east channel, the central channel and the west channel.

¶5 An island exists between the east and central channels. Across the southern part of the island is a fence marking the boundary with the land owned by a neighbor, Mr. Olsen. The Olsen property is to the south of both the Zablotney and Street properties. Ownership of the part of the island north of the fence depends on how one defines the main channel of the river. If it is assumed that the east channel of the river is the main channel, then the part of the island north of the fence belongs to Street. If it is assumed that the central channel of the river is the main channel, then the part of the island north of the fence belongs to the Zablotneys. At trial, the District Court presumed that the main channel is the channel carrying more than 50% of the water in the river, which, when measurements were taken in 1998, was the central channel.

¶6 In September 1996, Street observed that several logs had been placed in the river across the east channel and that the banks of the west and central channels had been cut away with a shovel. Street reported his observations to the Flathead County Conservation District who contacted the Zablotneys and requested that they remove the logs. Clifton Zablotney did so on September 30, 1996.

¶7 Street also applied to the conservation district for a permit to remedy the problems he alleged were caused by the dam. Street proposed that the situation could only be remedied by blocking off the central and west channels of the river with 150 yards of "rip rap" or rock.

Based on Street's representations, the conservation district issued him a permit to perform the work prior to high water in 1997, but the work was not done. The permit expired once high water occurred in May and June 1997. On July 30, 1997, the conservation district performed an inspection of the river. Following this inspection, no further permits were issued by the conservation district for work on the channels.

¶8 On August 25, 1997, Street filed a complaint alleging that the Zablotneys placed a dam of logs, gravel and sand across the main channel of the river in an attempt to divert the primary flow of the river through an overflow channel located on Street's property thereby damaging Street's downstream pump site. Street also alleged that the Zablotneys cut away the bank of the overflow channel to enhance the flow of water over Street's land. Street sought damages for repairing the area around his pump site as well as the river channels themselves. He also requested that the damages be trebled because the Zablotneys' actions constituted a trespass.

¶9 A non-jury trial was conducted on October 23 and 24, 2000, wherein the District Court heard testimony from each party's expert witness as well as the parties themselves. On March 1, 2001, the District Court issued its Findings of Fact, Conclusions of Law and Judgment wherein the court concluded that Street was entitled to judgment against the Zablotneys for $4,930 for the cost of the repairs to his pump site. The court also concluded that Street was entitled to judgment against the Zablotneys for damages in the sum of $52,000 for the cost of redirecting the river to its original main channel and repairing and restoring the river channels to their pre-1996 condition.

¶10 The court did not award Street treble damages for trespass under § 70-16-108, MCA, because there was no evidence of wrongful injuries to, or removal of, timber, trees, or underwood upon Street's land. Nor did the court award Street punitive damages as not all of the elements of a claim for punitive damages were proved by clear and convincing evidence as required by § 27-1-221, MCA.

¶11 The Zablotneys appeal the District Court's judgment.

## Discussion

¶12 *Did the District Court err in determining that the Zablotneys diverted the main channel of the Whitefish River thereby damaging Street's downstream pump site?*

¶13 The Zablotneys contend that the District Court erred in finding that the main channel of the river changed as a result of actions taken by the Zablotneys in 1995 and 1996. They maintain that the central channel had become, or was becoming, the main channel through a natural process of change in river morphology. The Zablotneys also contend that the District Court erred in finding that erosion around Street's pump site resulted from their actions.

¶14 This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24 (citing Rule 52(a), M.R.Civ.P.). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Guthrie*, ¶ 24 (citing *Engel v. Gampp*, 2000 MT 17, ¶ 31, 298 Mont. 116, ¶ 31, 993 P.2d 701, ¶ 31).

5

Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Tungsten Holdings, Inc. v. Olson*, 2002 MT 158, ¶ 13, 310 Mont. 374, ¶ 13, 50 P.3d 1086, ¶13 (quoting *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 408, 892 P.2d 563, 566). Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Guthrie*, ¶ 24 (citation omitted).

¶15 The Zablotneys specifically object to 21 of the District Court's 26 findings of fact. In doing so, they point out information in the record which they allege contradicts the District Court's findings. However, in response to each of the Zablotneys' objections, Street points to evidence and testimony in the record that supports the court's findings.

¶16 We review a district court's findings to determine whether substantial evidence supports those findings, not, as Zablotneys suggest, whether evidence exists to support contrary findings. *Rafanelli v. Dale* (1996), 278 Mont. 28, 37, 924 P.2d 242, 248 (citations omitted). After an extensive review of the record in this case and viewing the evidence in the light most favorable to Street as the prevailing party, as we are constrained to do, *see Guthrie*, ¶ 24, we hold that the District Court's findings are supported by substantial evidence. Accordingly, we hold that the District Court did not err in determining that the Zablotneys' actions diverted the main channel of the Whitefish River and thereby damaged Street's pump site.

¶17 Affirmed.

6

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE