**STATEWIDE RENT–A–CAR, INC., a Montana corporation, and Ed G. Leipheimer, III, Plaintiffs,**

v.

**SUBARU OF AMERICA, a corporation, and Northwest Subaru, Inc., a corporation, Defendants.**

**No. CV–88–042–BU–PGH.**

United States District Court,
D. Montana,
Butte Division.

Dec. 15, 1988.

R.D. Corette, Jr., Corette, Smith, Pohlman & Allen, Butte, Mont., for plaintiffs.

Ronald F. Waterman, Gough, Shanahan, Johnson & Waterman, Helena, Mont., Jon P. Christiansen, Brian W. McGrath, Foley & Lardner, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Plaintiffs Statewide Rent–A–Car, Inc.

("Statewide") and Ed G. Leipheimer, III,[1] instituted the above-entitled action against defendants Subaru of America ("Subaru") and Northwest Subaru, Inc. ("Northwest Subaru") seeking compensatory and punitive damages for the defendants' alleged tortious interference with a contract and breach of the Montana Automobile Dealership Law, §§ 61–4–201 to 61–4–210, Mont. Code Ann. (1987). Presently before the court is defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. After careful consideration, the court is prepared to rule.

In July, 1987, Statewide Rent–A–Car entered into a contract for the purchase of the Subaru franchise from Shamrock Motors, Inc., in Butte, Montana. The contract was conditioned upon Northwest Subaru's approval of Statewide as a dealer. However, Northwest Subaru refused to approve Statewide as a dealer and this action ensued. Specifically, plaintiffs' complaint alleges Northwest Subaru's refusal to approve Statewide as a Subaru dealer violated the Montana Automobile Dealership Law, §§ 61–4–201 to 61–4–210, Mont.Code Ann. (1987) and, furthermore, constituted tortious interference with the contract between Statewide and Shamrock Motors.

█ In response, defendants contend plaintiffs' claim under the Montana Automobile Dealership Law should be dismissed in that the plaintiffs lack standing to assert a claim thereunder.[2] Furthermore, defendants assert plaintiffs' claim for tortious interference with contract fails as a matter of law, thereby entitling defendants to summary judgment.

### Montana Automobile Dealership Law

Plaintiffs predicate their claim under the Montana Automobile Dealership Law on § 61–4–205(5), Mont.Code.Ann. (1987), which provides:

In instances where the change in ownership has the effect of the sale of the franchise, the franchisor may not without good cause withhold its consent to the sale. Good cause relates only to the transferee's financial and managerial capabilities or to the inability of the transferee to comply with a state or federal law relating to new motor vehicle dealerships. The burden of establishing good cause is upon the franchisor.

Defendants maintain the above-quoted language, coupled with the legislative history of the Montana Automobile Dealership Law, clearly establishes that a claim thereunder may only be brought by a franchisee against *its own* franchisor. Accordingly, defendants argue the plaintiffs herein lack standing under the Montana Automobile Dealership Law since that act was designed to protect existing franchisees, *i.e.*, Shamrock Motors herein, and not strangers to the franchise relationship such as Statewide. Upon review, the court is compelled to agree.

█ The rules of statutory construction dictate that in construing a statute in a case of first impression, a court looks to traditional signposts of statutory construction: First, the language of the statute itself; and second, if necessary, the statute's legislative history. *United States v. Gray*, 809 F.2d 579, 582 (9th Cir.1987), *citing, Brock v. Writers Guild of America West, Inc.*, 762 F.2d 1349, 1353 (9th Cir. 1985). *See also, Montana Tavern Association v. State Dept. of Revenue*, — Mont. —, 729 P.2d 1310, 1316 (1986). When examining statutory language, the plain meaning of the words used is controlling, absent a clearly expressed legislative intention to the contrary. *Gray, supra, citing, Powell v. Tucson Air Museum Foundation of Pima*, 771 F.2d 1309, 1311 (9th Cir.1985).

1. Plaintiff Ed Leipheimer is the owner and president of Statewide Rent–A–Car, Inc., a Montana corporation, doing business in Butte, Montana, as High Country Toyota.

2. While denominated a motion to dismiss for failure to state a claim upon which relief can be

granted, defendants' motion is properly treated as a motion for summary judgment under Rule 56, Fed.R.Civ.P., matters outside the pleadings having been submitted and considered by the court. Rule 12(b), Fed.R.Civ.P.

▪ Taken as a whole, the language of § 61–4–205, Mont.Code Ann. (1987), clearly regulates the relationship between a motor vehicle franchisor and its franchisees (*i.e.*, Subaru of America and Shamrock Motors, Inc., herein). Furthermore, a review of the pertinent legislative history evinces the legislature's intent, in designing the Montana Automobile Dealership Law, was to protect motor vehicle franchisees and dealers from those injuries to which they were susceptible by virtue of the economic inequality between themselves and their franchisors.

In this court's opinion, Montana's Automobile Dealership Law was intended to protect a franchisee who relies on a longstanding course of dealing with a franchisor. Accordingly, the court concludes the injuries alleged by the plaintiffs herein do not fall within the area of legislative concern which resulted in the enactment of Montana's Automobile Dealership Law and, therefore, plaintiffs lack standing to bring a claim pursuant to that statute.

Furthermore, the court is unpersuaded by plaintiffs' argument that, as a "new motor vehicle dealer",[3] as that term is defined in Title 61 of the Montana Code Annotated, the provisions of § 61–4–210(3), Mont.Code Ann. (1987)[4] entitle them to pursue a cause of action for violation of § 61–4–205(5), Mont.Code Ann. (1987). Based upon the rationale previously expressed, any action prosecuted pursuant to the jurisdictional grounds set forth, section 61–4–210(3), would properly belong to Northwest Subaru's existing franchisee, Shamrock Motors, and not to the plaintiffs herein. Section 61–4–210(3) is simply the procedural counterpart to the substantive rights established by Title 61, Part 4, Mont. Code Ann. (1987).

Under plaintiffs' interpretation of section 61–4–210(3), a prospective purchaser of a motor vehicle dealership would have standing to sue only in those limited circumstances where it happened to be a new motor vehicle dealer for a different manufacturer and a prospective purchaser in any other business would not fall within the statute's protection. The court agrees with the defendants' assertion that such an irrational result could not have been intended by the legislature. Accordingly, the court is constrained to grant defendants' motion for summary judgment as to plaintiffs' statutory claims.

*Tortious Interference With Contract*

▪ Plaintiffs maintain the defendants' actions tortiously interfered with a valid contract extant between Shamrock Motors and Statewide. Under Montana law,[5] the elements of tortious interference with contract are as follows: (1) that a contract was entered into; (2) that its performance was refused [or breached]; (3) that such refusal [or breach] was induced by the unlawful and malicious acts of the defendant; and (4) that damages have resulted to the plaintiff. *Pelton v. Markegard*, 179 Mont. 102, 586 P.2d 306, 308 (1978); *Phillips v. Montana Education Association*, 187 Mont. 419, 610 P.2d 154, 157 (1980). Furthermore, the Montana Supreme Court, in *Taylor v. Anaconda Federal Credit Union*, 170 Mont. 51, 550 P.2d 151, 154 (1976), stated:

> The action of interference with contract rights is a tort action, tort meaning wrongful or unlawful or without justifi-

---

**3.** Section 61–4–201(11), Mont.Code Ann. (1987), defines "new motor vehicle dealer" as:

> ... a person who buys, sells, exchanges, or offers or attempts to negotiate a sale or exchange or any interest in or who is engaged in the business of selling new motor vehicles or used motor vehicles taken in trade on new motor vehicles.

**4.** Section 61–4–210(3), Mont.Code Ann. (1987), provides:

> If any new motor vehicle dealer incurs pecuniary loss due to a violation of this part by a manufacturer, distributor, importer, or factory branch or representative or agent thereof,

the dealer may recover damages therefor in a court of competent jurisdiction in an amount equal to three times the pecuniary loss, together with costs including reasonable attorney's fees.

**5.** In diversity actions such as this, the substantive rights and obligations of the parties are governed by the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner*, 606 F.2d 864 (9th Cir.1979).

cation. The element of malice (not malice as it is understood in the popular sense of spite or ill will, but malice in the legal sense) meaning the intentional doing of a wrongful act without justification or excuse, is an essential element of an action for interference with contract. Such malice is not presumed and cannot be inferred from the commission of a lawful act. (citations omitted).

■ Upon review, the court concludes plaintiffs have failed to establish the third element of a claim for tortious interference with contract (*i.e.,* that the refusal of performance was induced by the unlawful and malicious acts of the defendant). As set forth above, the court concludes defendants' refusal to approve Statewide as a Subaru dealer was not violative of Montana's Automobile Dealership Act, specifically, § 61–4–205(5), Mont.Code Ann. (1987).

Furthermore, the court concurs with defendants' assertion that Northwest Subaru should be allowed, under the law, to exercise its business judgment to protect its own financial interests free from liability under the tort of malicious interference with contract. *See, Quinlivan v. Brown Oil Co.,* 96 Mont. 147, 29 P.2d 374, 377–378 (1934); *Howard v. Chrysler Corp.,* 705 F.2d 1285, 1287 (10th Cir.1983); PROSSER, LAW OF TORTS, 5th ed., p. 986 (1984). The defendants clearly had a financial interest in the subject dealership which, in this court's opinion, gave rise to a privilege as to plaintiffs' allegations of malicious interference with contract. The franchise system becomes meaningless if franchisors lose the right to review potential franchisees and are forced to accept franchisees they did not choose. *Sundown Imports v. Arizona Dept. of Transportation, etc.,* 115 Ariz. 428, 565 P.2d 1289, 1293 (App.1977). The plaintiffs fail to present a compelling argument as to the illegality of defendants' decision to withhold approval of Statewide as a Subaru dealer.

Accordingly, for the reasons set forth herein, the court concludes the defendants are entitled to summary judgment with respect to plaintiffs' claims of malicious interference with contract.

CONCLUSION

Plaintiffs intimate that, in the event the court were to rule against their claims for tortious interference with a contract, they would pursue a claim for tortious interference with a prospective economic advantage. However, such a claim has yet to be set forth in the pleadings herein. Accordingly, the court deems it appropriate to grant the plaintiffs a period of twenty (20) days from the date hereof within which to file an amended pleading setting forth their claim for tortious interference with a prospective economic advantage.

Furthermore, for the reasons set forth herein, the court concludes that as to plaintiffs' original complaint, defendants' motion for summary judgment be, and the same hereby is, GRANTED.

IT IS SO ORDERED.