**ROCKY MOUNTAIN BIOLOGICALS, INC., and Skyway Purified Solutions, Inc., Plaintiffs,**

v.

**MICROBIX BIOSYSTEMS, INC., and Irvine Scientific Sales Company, Inc., Defendants.**

**No. CV 13–73–M–DLC.**

United States District Court,
D. Montana,
Missoula Division.

Oct. 30, 2013.

Nathan G. Wagner, William K. Vancanagan, Datsopoulos MacDonald & Lind, Missoula, MT, for Plaintiffs.

Stephen D. Bell, Dorsey & Whitney LLP, Denver, CO, Ben D. Kappelman, Dorsey & Whitney LLP, Minneapolis, MN, for Defendants.

ORDER

DANA L. CHRISTENSEN, Chief Judge.

Plaintiffs Rocky Mountain Biologicals, Inc. ("Rocky Mountain") and Skyway Purified Solutions, Inc. ("Skyway") brought this action against Defendants Microbix Biosystems, Inc. ("Microbix") and Irvine Scientific Sales Company, Inc. ("Irvine") after Microbix rescinded its contract to sell

equipment to Rocky Mountain. Irvine objected to the equipment sale on the grounds that it would violate a pre-existing contract between Irvine and Microbix. The Court dismissed Microbix from the action for lack of personal jurisdiction. Rocky Mountain's claims were thus reduced to one count of tortious interference against Irvine. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending before the Court are Irvine's motion for summary judgment (Doc. 24) and motion to supplement the summary judgment record (Doc. 32), and Rocky Mountain's Rule 56(d) motion (Doc. 28), motion for leave to amend its complaint (Doc. 35), motion to stay arbitration and vacate emergency arbitration order (Doc. 39), and motion to supplement the record (Doc. 47). With the exception of Rocky Mountain's motion to supplement the record, all motions were fully briefed by October 7, 2013. The Court held a hearing on all fully briefed motions on October 11, 2013. For the reasons explained below, the Court grants Irvine's motions and denies Rocky Mountain's motions.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute between three [1] companies involved in the business of manufacturing water products for use in pharmaceutical and medical industries. Irvine is a California company, Microbix is a Canadian Corporation, and Rocky Mountain is a Montana company.

On October 1, 2012, Irvine and Microbix entered into a binding letter of intent to begin exclusive negotiations concerning Irvine's purchase of all of the commercial assets of Microbix relating to its water for injection and purified water business. The letter of intent provided that "[d]uring the period from the date hereof and December 31, 2012, [Microbix] shall not discuss, negotiate or accept any agreement with any third party for the sale of all or any part of the commercial assets to be acquired." (Doc. 32–2 at 5.)

This provision notwithstanding, on October 12, 2012, Microbix entered into a second, binding letter of intent with Rocky Mountain which provided that Rocky Mountain would be allowed to evaluate certain equipment used for the manufacture of water products ("Equipment") located at a manufacturing facility leased by Microbix in Toronto, Ontario ("Facility"). Under this second Letter of Intent, Rocky Mountain was allowed 60 days to evaluate the Equipment and Microbix was obligated to support Rocky Mountain with its evaluation. At the end of the evaluation period, Rocky Mountain had the option to (1) sign an agreement with Microbix to operate the Equipment at the Facility and pay Microbix a rental cost, (2) negotiate with the Facility landlord to remove the Equipment and pay restoration costs, or (3) negotiate a new lease with the Facility landlord relieving Microbix of its lease obligations.

On December 31, 2012, Irvine and Microbix entered into a Commercial Asset Purchase Agreement ("Irvine–Microbix Agreement") whereby Irvine purchased substantially all of Microbix's water products business assets, including all contracts, customer information, and goodwill. Microbix further agreed to maintain the confidentiality of all proprietary information and agreed not to compete with Irvine, either directly or indirectly. Competition under the agreement includes acting as a consultant, adviser, or otherwise acting to assist any entity or individual involved in the water production business.

---

1. Including Plaintiff Skyway Purified Solutions, Inc., the assignee of Rocky Mountain's contractual rights under the Equipment Agreement, there are actually four companies involved. For simplicity's sake, all references to Rocky Mountain include Skyway.

The Irvine–Microbix Agreement, however, did not include a sale of the Equipment.

One month later, on February 1, 2013, Microbix entered into a Purchase and Sale and Service Agreement ("Equipment Agreement") with Rocky Mountain. Under the Equipment Agreement, Rocky Mountain assigned to Plaintiff Skyway Purified Solutions, Inc. ("Skyway") its option to carry on operations at the Facility using Microbix's Equipment to manufacture water products. Under the Equipment Agreement, Rocky Mountain agreed to pay Microbix rental payments for use of the Equipment at the Facility until expiration of Microbix's lease on July 31, 2013. Rocky Mountain planned to then negotiate a new lease with the Facility landlord, and so agreed to relieve Microbix of its obligation to restore the Facility to its original state.

While Rocky Mountain has maintained throughout these proceedings that it had sole rights to own, possess, and use the Equipment previous to entering into the Equipment Agreement, the Equipment Agreement provides that *"Microbix* will grant title to SPS for the Water Equipment with completion of the purchase." (Doc. 7–1, at 2, emphasis added.) The ownership of the Equipment is made more ambiguous by other provisions in the Equipment Agreement. For instance, in the paragraph purporting to clarity ownership, the Equipment Agreement apparently contains a critical typo: "Microbix has previously sold the Water Equipment (listed in SCHEDULE A) to [sic] for an amount of $1. RMB has subsequently transferred the rights and use of the equipment to SPS and Microbix has approved the assignment." (Doc. 7–1 at 3.)

Thus, the entity to whom Microbix "previously sold the Equipment" is omitted. Assuming Rocky Mountain purchased the Equipment, it appears that perhaps Rocky Mountain purchased (for $1) only the right to use the Equipment, rather than title to the Equipment and the sole right of possession, ownership, and control.[2]

Irvine soon learned of the Equipment Agreement, and on March 4, 2013, sent Mircobix a letter alleging that the Equipment Agreement constituted a breach of the non-competition provisions of the Irvine–Microbix Agreement. Irvine demanded that Microbix immediately take remedial measures. On March 18, 2013, Irvine sent a letter to Rocky Mountain notifying Rocky Mountain of the letter sent to Microbix and demanding that Rocky Mountain cease using the Equipment.

On March 21, 2013, Microbix sent Rocky Mountain a letter purporting to terminate the Equipment Agreement, alleging material breaches of the Equipment Agreement, and asserting that the Equipment Agreement was signed by a person lacking the authority to execute it. Despite Rocky Mountain's demands to the contrary, Microbix has steadfastly maintained that the Equipment Agreement is terminated, and has refused to allow Rocky Mountain access to the Facility for purposes of operating the Equipment.

Rocky Mountain filed suit against Microbix and Irvine on April 4, 2013. The complaint advanced several claims against Microbix and one count of tortious interference against Irvine. On May 8, 2013, the Court held a hearing on Microbix's motion to dismiss for lack of personal jurisdiction. Following the hearing, Micro-

---

**2.** As explained below, Ownership of the Equipment has no bearing on the merits of Rocky Mountain's tortious interference claim. Ownership and possession makes some differ-

ence only with respect to Rocky Mountain's motion to amend to add a claim of conversion.

bix was dismissed from the case for lack of personal jurisdiction.

Irvine filed a motion for summary judgment on May 31, 2013. In late June, in response to Irvine's motion for summary judgment, Rocky Mountain filed a Rule 56(d) motion seeking to defer consideration of Irvine's summary judgment motion until it could conduct further discovery, which Irvine opposed. Irvine then filed a motion to supplement the summary judgment record with an Emergency Arbitration Order ("Arbitration Order") which was issued following emergency arbitration proceedings between Microbix and Irvine on July 30, 2013 ("emergency arbitration"). The emergency arbitration stemmed from the ongoing potential of Rocky Mountain restarting Equipment operations at the Facility, which Irvine alleged violated the Irvine–Microbix Agreement. The arbitrator awarded injunctive relief to Irvine, finding that it was likely to succeed on its claims against Microbix. According to the relief granted in the Arbitration Order, Irvine was given access to the Facility for the purpose of partially dismantling the Equipment in a manner that temporarily prevented it from being used. Some Equipment components were then to be safely stored in a neutral storage facility pending resolution of the dispute between Irvine and Microbix.

Rocky Mountain then filed a motion seeking an order from this court that would stay the arbitration proceedings that were ongoing between Microbix and Irvine and vacate the Arbitration Order. Soon thereafter Rocky Mountain sought leave to amend its complaint. Rocky Mountain contended that new facts—failing to give Rocky Mountain notice of the emergency arbitration and the dismantling of the Equipment pursuant to the Arbitration Order—constituted a new basis for claims against Irvine. Rocky Mountain's proposed amended complaint alleges one count of tortious interference with contract or prospective business advantage and one count seeking declaratory judgment regarding the rights and legal relations of Rocky Mountain, Skyway, and Irvine vis-a-vis the Irvine–Microbix Agreement.

On October 11, 2013, the Court held a hearing on all motions. At the hearing, counsel for Rocky Mountain indicated that its claim for tortious interference, as stated in its proposed Verified First Amended Complaint, might be better stated as a claim for conversion. Accordingly, Rocky Mountain indicated it might seek leave to amend its complaint to add a claim for conversion.

The Court will address each motion, including the potential motion seeking amendment to add a claim for conversion, in turn.

## I. Rocky Mountain's Motion to Vacate the Emergency Arbitration Order and Stay Arbitration

The Court will first address Rocky Mountain's Motion to Vacate the Emergency Arbitration Order and Stay Arbitration because the dispute here also implicates Irvine's Motion to Supplement the Summary Judgment Record.

### A. Vacating the Arbitration Order

Rocky Mountain moves the Court for an order vacating the Arbitration Order. The threshold issue in deciding this motion is whether the Court has authority to grant the motion. Rocky Mountain contends that the Court has authority to issue a stay of further Irvine–Microbix arbitration proceedings and that New York law mandates that the Arbitration Order be vacated. Irvine contends that the Court lacks authority to grant Rocky Mountain's motion because the Court cannot stay arbitration and/or vacate an arbitration order at the

bidding of a stranger to the arbitration. The Court agrees with Irvine.

■ The Federal Arbitration Act provides that a Court may vacate an arbitration award "upon the application of *any party to the arbitration.*" 9 U.S.C. § 10(a) (emphasis added). Accordingly, Ninth Circuit case law holds that only a party to the arbitration may seek an order from a Court vacating an arbitration award. *Local 13, International Longshoremen's and Warehousemen's Union v. Pacific Maritime Assoc.,* 441 F.2d 1061, 1064 (9th Cir. 1971)(a party "may proceed under section 10 of the Arbitration Act only if it was a party to the arbitration.")(internal quotation marks omitted). The Court finds this controlling law dispositive of Rocky Mountain's motion. Rocky Mountain was not a party to the emergency arbitration. Therefore, it cannot seek an order from this Court vacating the arbitration award.

Rocky Mountain's contention that the Arbitration Order must be vacated because it is void is premised on its contention that, because the Irvine–Microbix Agreement contains a choice of law provision calling for application of New York law to resolve contract interpretation disputes, New York rules of civil procedure applied to the emergency arbitration and required Rocky Mountain to be joined to the emergency arbitration as a necessary party.

Irvine, however, points out that the Irvine–Microbix Agreement provided that arbitration would be conducted "under the [American Arbitration Association]'s or any successor organization's rules for commercial arbitration." (Doc. 32–2, at 9, ¶ 20.) Irvine contends that these rules were applicable to the arbitration, not New York rules of civil procedure. It further contends that the Irvine–Microbix Agreement's choice of law provision guides choice of *substantive* law for interpreting

the contract, not rules for the arbitration. Irvine further counters that Rocky Mountain was a not a party to the contract or arbitration agreement between Irvine and Microbix and therefore had no right to participate in the emergency arbitration.

■ The Court agrees with Irvine. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Just as [parties to an arbitration agreement] may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior U.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)(internal citations omitted). Pursuant to its application of Article 37 of the ICDR Rules, the emergency arbitrator expressly rejected the contention by Microbix that Rocky Mountain should be joined in the arbitration. (Doc. 32–2, at ¶¶ 20–25.) The arbitrator then proceeded to arbitrate the dispute by applying the rules of arbitration agreed to by the parties in their contract. Rocky Mountain's contention that the Arbitration Order is void and must be vacated is without merit. The motion to vacate the Arbitration Order will be denied.

### B. Staying Further Irvine–Microbix Arbitration

■ Rocky Mountain moves the Court for an order staying any further arbitration proceedings involving Irvine and Microbix to the extent that further arbitration purports to resolve disputes concerning the Equipment. Rocky Mountain's request that the Court issue an

order staying further arbitration proceedings between Irvine and Microbix is also contrary to controlling law.

■ Section 3 of the Arbitration Act allows courts to stay litigation pending resolution of the arbitration proceedings. 9 U.S.C. § 3. Section 4 of the Arbitration Act allows a court to compel arbitration if an agreement provides for arbitration. 9 U.S.C. § 4. Absent from the Federal Arbitration Act is any mechanism whereby a Court can stay arbitration pending resolution of related litigation. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209–1210 (9th Cir.1998)("Unlike the FAA, California's arbitration rules grant courts the discretion to stay arbitration proceedings pending resolution of related litigation."). Moreover, a court order staying arbitration entered into pursuant to a valid arbitration clause would violate clear mandates from the United States Supreme Court. See *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S.Ct. 927 (The Federal Arbitration Act "is a congressional declaration of a liberal policy favoring arbitration agreements"); *id.* 460 U.S. at 24–25, 103 S.Ct. 927 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *AT & T Mobility LLC v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.")(internal citations omitted).

■ More to the point, "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20, 103 S.Ct. 927. Under these clear declarations from the United States Supreme Court, this Court finds that it lacks authority to stay the Irvine–Microbix Arbitration at the request of Rocky Mountain, a stranger to the arbitration proceedings. None of the Fifth Circuit cases Rocky Mountain cites provides support for an arbitration proceeding to be stayed at the request of a stranger to the arbitration. The Irvine–Microbix Arbitration was entered into pursuant to the arbitration clause in the Irvine–Microbix Agreement. This Court lacks authority to deny the parties to that agreement their contractual right to arbitrate their disputes. The motion to stay Irvine–Microbix Arbitration proceedings will be denied.

■ Likely sensing the legal hurdles it faces in requesting a stay of arbitration and a vacation of an arbitration award, Rocky Mountain reformulates its motion in its reply brief. It requests that the Court construe its motion as one for injunctive relief requiring Irvine to return the Equipment's control panel to the Facility. Rocky Mountain asserts that this will restore the status quo. Of course, the Court need not address arguments raised for the first time in a reply brief, *See e.g., State of Nevada v. Watkins,* 914 F.2d 1545, 1560 (9th Cir.1990), as Irvine has had no opportunity to brief Rocky Mountain's request for a mandatory injunction. Accordingly, the Court will only briefly address this request.

■ Rocky Mountain's request for an injunction fails because its contention that returning the Equipment's control panel will restore the status quo is erroneous. Irvine sought the Arbitration Order on the eve of a change in control of the Facility where the Equipment is located. Thus, the status quo regarding the use and control of the Equipment was approaching a major change before the Arbitration Order was entered. Until July 31, 2013, Microbix was in control of the Equipment at the

Facility and, consistent with its rescinding of the Equipment Agreement, Microbix refused to allow Rocky Mountain to enter the Facility to operate the Equipment. Microbix's lease of the Facility, however, was set to expire on July 31, 2013, so that the Facility landlord was free to allow Rocky Mountain access to the Facility to operate the Equipment.

Rocky Mountain's request for an injunction is premised on its position that it seeks only to restore the status quo. It is clear, however, that an order forcing Irvine to replace the Equipment's control panel would amount to a mandatory injunction, not merely a restoration of the status quo. Rocky Mountain cannot meet the burden required for a mandatory injunction. *See Stanley v. University of Southern Cal.*, 13 F.3d 1313, 1320 (9th Cir.1994)("A mandatory injunction goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored.")(internal quotation marks omitted). Moreover, any such order would constitute direct interference with the Arbitration Order issued pursuant to the emergency arbitration. Rocky Mountain's request for injunctive relief will be denied.

## II. Irvine's Motion to Supplement the Summary Judgment Record

Irvine moves the Court to allow it to supplement the summary judgment record with the Arbitration Order. Irvine contends that supplementing the record is appropriate pursuant to former Local Rule 56.1(d). It contends the supplemental material is relevant to support Irvine's motion for summary judgment and that it could not have included the material with its original motion because the Arbitration Order was not issued until after briefing on the summary judgment motion was completed. Rocky Mountain opposes the motion on the grounds that the Arbitration

Order is invalid because Rocky *Mountain* was not joined in the emergency arbitration and it was a necessary party. Rocky Mountain does not object to the procedural mechanism for supplementing the record and does not object to the Arbitration Order's authenticity. For the reasons explained below, the Court will allow Irvine to supplement the summary judgment record.

 Irvine cites this Court's former Local Rule 56.1(d), which was in effect until January 2013, as a mechanism whereby the Court may allow a party to supplement the summary judgment record in certain circumstances. Former Local Rule 56.1(d) provided:

> Upon filing of the Statement of Undisputed Facts and Statement of Genuine Issues, the factual record for the motion is deemed complete. Parties may not file further factual materials except with leave of the Court upon a showing that the factual materials were reasonably omitted from the Statement of Undisputed Facts or Statement of Genuine Issues.

The Court finds that permitting Irvine to supplement the summary judgment record with the Arbitration Order is consistent with the purpose of former Local Rule 56.1(d). The Arbitration Order was issued after briefing on Irvine's summary judgment motion was completed. Thus, the Arbitration Order was reasonably omitted from Irvine's Statement of Undisputed Facts. Moreover, Rocky Mountain does not object to supplementation of the summary judgment per se.

Rocky Mountain objects only that the Arbitration Order should not be considered because it contends that the Order is void. For the reasons explained in Section I(A), this contention is without merit. The Court will consider the Arbitration Order as part of the summary judgment record.

## III. Irvine's Motion For Summary Judgment

Irvine contends it is entitled to summary judgment because Rocky Mountain cannot meet the elements of its lone claim against it—tortious interference with contract or prospective business advantage. Irvine contends that Rocky Mountain's claim fails because there is no evidence that Irvine acted without justifiable cause or right.

In its Complaint, Rocky Mountain alleges that Irvine sent two letters—one to Microbix alleging breaches of the Irvine–Microbix Agreement, and one to Rocky Mountain informing it of the letter sent to Microbix and demanding that Rocky Mountain cease use of the Equipment. Rocky Mountain's claims against Irvine stem from these factual allegations regarding the letters.

Irvine contends that the alleged facts cannot support a claim for tortious interference, because Irvine acted only in good faith and out of a desire to protect its own legitimate business interest. Irvine's properly supported Statement of Undisputed Facts establishes that the letters referenced in the Complaint were sent in a good faith effort to protect its legitimate business interests based on the Irvine–Microbix Agreement.

 In responding to Irvine's motion, Rocky Mountain filed a Rule 56(d) motion seeking to postpone resolution of the summary judgment motion. Rocky Mountain did not file a Statement of Disputed Facts. Pursuant to Local Rule 56.1(d), "[f]ailure to file a Statement of Disputed Facts will be deemed an admission that no material facts are in dispute." L.R. 56.1(d). Rocky Mountain contends that application of the rule in the context of its Rule 56(d) motion "is absurd" (Doc. 33 at 5), but can point to no exception to the local rule. Regardless, Rocky Mountain has still not offered any Statement of Disputed Facts or any prop-

erly supported evidence to dispute the Statement of Undisputed Facts offered by Irvine. In assessing the merits of Irvine's motion, therefore, the Court will treat the facts offered by Irvine as true and undisputed.

### A. Summary Judgment Standard

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505 (internal quotation marks omitted).

### B. Analysis

 The elements of a claim for tortious interference with contract are: (1) intentional and willful acts by the defendant; (2) calculated to cause damage to the plaintiff in its business; (3) done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant; and (4) actual

damages and loss resulting. *Emmerson v. Walker,* 357 Mont. 166, 236 P.3d 598, 604 (2010).

 "The tort of tortious interference requires proof of malice in the legal sense-that the defendant acted wrongfully, unlawfully, or without justification or excuse. Such malice is not presumed and cannot be inferred from the commission of a lawful act." *Signal Peak Energy, LLC v. E. Montana Minerals, Inc.,* 922 F.Supp.2d 1142, 1150 (D.Mont.2013)(citing *Taylor v. Anaconda Federal Credit Union,* 170 Mont. 51, 550 P.2d 151, 154 (1976)). A party may be "instrumental in procuring the severance of an agreement" and remain free from liability for tortious interference so long as its primary purpose is "the honest furtherance of [its] own business enterprise." *Quinlivan v. Brown Oil Co.,* 96 Mont. 147, 29 P.2d 374, 375 (1934). A party "should be allowed, under the law, to exercise its business judgment to protect its own financial interests free from liability under the tort of malicious interference with contract." *Statewide Rent–A–Car, Inc. v. Subaru of America,* 704 F.Supp. 183 (D.Mont.1988).

 The intent of a tortious interference defendant is of primary importance. Montana law provides that action taken in the good faith belief that it is performed with right and justifiable cause cannot serve as the basis for a tortious interference claim, even if it turns out that, in fact, the action is not legally justified. *Grenfell v. Anderson,* 311 Mont. 385, 56 P.3d 326, 336–337 (2002). In *Grenfell,* the Montana Supreme Court held that a landlord could not be held liable for tortious interference even though he improperly locked out his tenant's sublessor by failing to afford the tenant proper notice of a breach of the lease agreement. *Id.,* 56 P.3d at 338. The Court reasoned that even though the notice to the tenant was legally deficient, the landlord's actions were taken in the good faith belief that the lease had been breached and that the notice provided was sufficient. *Id.* Even though the landlord's actions were legally improper, the Court upheld dismissal of the tenant's tortious interference claim because the landlord acted in good faith. *Id.*

 It is undisputed that Irvine sent the letters to Microbix and Rocky Mountain based upon a good faith belief that Microbix was in breach of the Irvine–Microbix Agreement. Montana law provides that even if Irvine's actions resulted in the severance of the Equipment Agreement, Irvine cannot be held liable for tortious interference when it acted to protect its legitimate business interest in "honest furtherance of [its] own business enterprise." *Quinlivan,* 29 P.2d at 375; see also *Statewide Rent–A–Car,* 704 F.Supp. at 186. Moreover, Montana law provides that even if Irvine was mistaken in its belief that Microbix was in breach of the Irvine–Microbix Agreement, Irvine cannot be held liable when it acted in good faith. *See Grenfell,* 56 P.3d at 337–338. Irvine's undisputed good faith belief that its actions were justified is sufficient to defeat Rocky Mountain's tortious interference claim as a matter of law. Accordingly, Irvine has shown that it is entitled to judgment as a matter of law.

## IV. Rocky Mountain's Rule 56(d) Motion

Pursuant to Fed.R.Civ. P. 56(d), Rocky Mountain seeks deferral of the Court's decision on Irvine's motion for summary judgment. Rocky Mountain contends that ruling on the summary judgment motion should be deferred because it has not had a reasonable opportunity to conduct discovery due to the fact that settlement was pursued in lieu of discovery.

In support of its Rule 56(d) motion, Rocky Mountain asserts discovery will uncover (1) the timing of Irvine's negotiations; (2) the date on which the Irvine–Microbix Agreement was reached; (3) whether Irvine had knowledge that Microbix intended to sell its Equipment to Rocky Mountain before the Irvine–Microbix Agreement was reached; (4) whether Irvine was aware, at the time it sent the letters, that Microbix had sold its Equipment to Rocky Mountain; (5) whether Irvine acted with intent to harm Rocky Mountain; and (6) whether Microbix validly conveyed the Equipment to Rocky Mountain.[3] Rocky Mountain contends that establishing these facts through discovery is essential to the determination of Irvine's motion for summary judgment.

Irvine counters that Rocky Mountain's Rule 56(d) motion is deficient because the facts sought are cumulative, general, speculative, and immaterial. Irvine contends that issues (1)-(4) are affirmatively established in Irvine's summary judgment motion. Irvine contends that issue (5) only expresses hope that evidence will contradict what was affirmatively established in the record and that there is no indication that such facts exist. Irvine contends issue (6) is nonspecific and immaterial. Irvine also contends that Rocky Mountain has failed to diligently pursue discovery.

Generally, "where a summary judgment motion is filed ... early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant a [Rule 56(d) ] motion fairly freely." *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation,* 323 F.3d 767, 773 (9th Cir.2003). However, it is the burden of the party moving under Rule 56(d) to show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage,* 525 F.3d 822, 827 (9th Cir.2008). In other words, the party seeking to conduct discovery "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir.1998). When a party moving for summary judgment provides evidence that "affirmatively negates the factual issues which the opposing party claims remain controverted" a court should deny a Rule 56(d) motion. *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir.1987). A party is not entitled to additional discovery under Rule 56(d) "if it fails diligently to pursue discovery before summary judgment." *Mackey v. Pioneer Nat. Bank,* 867 F.2d 520, 524 (9th Cir.1989). Failure to comply with Rule 56(d)'s requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Family Home and Finance Center, Inc.,* 525 F.3d at 827 (quoting *Cal. on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998)).

The Court finds that Rocky Mountain has failed to satisfy the requirements of a Rule 56(d) motion. The evidence provided by Irvine affirmatively negates the factual issues which Rocky Mountain contends remains controverted. Moreover, many of the sought-after-facts are not essential to opposing Irvine's motion for summary judgment. Furthermore, the Court is not persuaded that conducting discovery pre-

---

**3.** There is some confusion about issue number 6. In its brief, issue (6) is as described above, but in the supporting affidavit, issue (6) pro-

vides "the validity of the Rocky Mountain/Microbix Agreement and the Irvine/Microbix Agreement."

cludes settlement discussions. Regardless, the Court will address each issue in turn.

Issue (1) seeks discovery into "the timing of Irvine's negotiations with Microbix." (Doc. 28 at 3.) The evidence of record affirmatively establishes that Irvine's negotiations with Microbix formally began on October 1, 2012, when the parties entered into a binding letter of intent, and concluded on December 31, 2012, when the parties executed the Irvine–Microbix Agreement. Further discovery will not establish anything different. Furthermore, Rocky Mountain does not provide the Court with any information to suggest that any other facts exist relative to the timing of Irvine's negotiations with Microbix. While the timing of the negotiations may be relevant to Irvine's intent, the evidence of record affirmatively establishes the timing of negotiations. Irvine entered negotiations with Microbix before Rocky Mountain began negotiating with Microbix. Irvine closed its deal with Microbix before Rocky Mountain executed the Equipment Agreement. The timing of the negotiations thus evidences Irvine's good faith and justification in sending the letters.

Issue (2) seeks information about the date on which the Irvine–Microbix Agreement was reached. Again, this information is affirmatively established in the record. The parties executed the Irvine–Microbix Agreement on December 31, 2012. More discovery will not uncover anything different and there is nothing to suggest that any facts exist that would controvert the record on this issue.

Issue (3) seeks information about "whether Irvine had knowledge that Microbix intended to sell its equipment to [Rocky Mountain] before the Irvine/Microbix Agreement was reached." (Doc. 28 at 3.) Again, this fact is affirmatively established in the record by the affidavits provided by Irvine supporting its motion for summary judgment. Irvine's Chief Operating Officer, Timothy Mullane, testified that "When [Irvine] entered into the [Irvine–Microbix] Agreement, it had no knowledge or understanding that [Rocky Mountain] had approached Microbix concerning the purchase of Microbix's water production business or the Equipment." (Doc. 17 at 7, ¶ 11.) Mr. Mullane further testified that he "remained unaware" of the Equipment Agreement until February 2013. *Id.*, at 7, ¶ 12. A deposition of Mr. Mullane will not alter these uncontroverted facts.

Issue (4) seeks information about "whether Irvine was aware, at the time Irvine interfered with the Plaintiffs' contract with Microbix, that Microbix had sold its equipment to [Rocky Mountain]."[4] (Doc. 28 at 3.) As noted above, Rocky Mountain's tortious interference claim is premised on the letters Irvine sent to both Microbix and Rocky Mountain. Clearly, Irvine knew about the Equipment Agreement when it sent the letters. It is undisputed that the Equipment Agreement was the catalyst for Irvine's letters. Further discovery will not reveal anything different.

Issue (5) broadly seeks information about "whether Irvine acted with intent to harm" Rocky Mountain. (Doc. 28 at 3.) This request for discovery cannot serve as the proper basis for granting a Rule 56(d) motion because it is non-specific and Rocky Mountain fails to provide any evidence that any such facts exist. A party moving under Rule 56(d) must set forth "the *specific* facts it hopes to elicit from

---

4. The Court presumes that "Irvine" should be replaced with "Rocky Mountain."

further discovery." *Family Home and Finance Center, Inc.*, 525 F.3d at 827 (emphasis added). It must also show that "the facts sought exist." *Id.* In this case, Irvine has consistently maintained that it acted only to protect its legitimate business interest and that it acted in good faith. Nothing in the record suggests anything different and the affidavits submitted by Mr. Mullane fully support Irvine's position. (Docs. 24–3 at 3, ¶ 8; 17 at 9–11.) Rocky Mountain's mere hope that further evidence may develop prior to trial and that such evidence will contradict the affidavits already in the record is insufficient to support its motion for relief under Rule 56(d). *Continental Mar. v. Pacific Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir.1987) ("Since Continental's [Rule 56(d) ] motion was not specific, but only expressed the hope that evidence to contradict the affidavits would transpire at deposition," the trial court properly denied the motion.).

■ In its supporting brief, Issue (6) requests discovery about "whether Microbix validly conveyed the equipment . . . to the Plaintiffs." (Doc. 28 at 3.) Issue (6), as described in Rocky Mountain's moving brief, is not relevant to whether or not Irvine tortiously interfered with the Equipment Agreement. Irvine maintains that it acted in good faith and in an effort to protect its legitimate business interest in sending the letters to Rocky Mountain and Microbix. Whether or not the Equipment Agreement is valid is immaterial to Irvine's intent with respect to the letters. Thus, as described in its moving brief, issue (6) is insufficient to support a Rule 56(d) motion because it is not essential to Rocky Mountain's opposition to Irvine's summary judgment motion.

In the affidavit supporting the Rule 56(d) motion, issue (6) requests discovery about "the validity of the Rocky Moun-

tain/Microbix Agreement and the Irvine/Microbix Agreement." For the same reasons explained above with respect to the validity of the Equipment Agreement, the validity of the Irvine–Microbix Agreement is not essential. Whether or not the Irvine–Microbix Agreement was "valid" makes no difference as to whether Irvine acted in good faith. *See Grenfell*, 56 P.3d at 336–337. Moreover, there is absolutely nothing to suggest that the Irvine–Microbix Agreement is invalid. Issue (6) also fails to satisfy the requirements of a proper Rule 56(d) motion.

■ Finally, while the Court does not find that Rocky Mountain has been dilatory in seeking discovery, Rocky Mountain cannot be said to have diligently pursued discovery as required in a Rule 56(d) motion. See *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 524 (9th Cir.1989). As stated above, discovery and settlement discussions are not mutually exclusive tasks. Rocky Mountain filed its complaint on April 11, 2013. Irvine's motion for summary judgment has been pending for nearly five months. Yet, it appears Rocky Mountain has not yet conducted any discovery. (See Doc. 28 at 2.) Rocky Mountain attributes this failing to its pursuit of settlement negotiations, but its decision to refrain from conducting discovery and pursue settlement does not excuse it from the requirement that it diligently pursue discovery. See *Cervantes v. Jones*, 188 F.3d 805, n. 11 (7th Cir.1999)(affirming a denial of a Rule 56(d) motion when discovery was postponed in order to "foster an atmosphere conducive to settlement"). Rocky Mountain's failure to conduct any discovery thus far in this case provides further reason to deny its Rule 56(d) motion.

In sum, and most important to the Court's resolution of this issue, Rocky Mountain's Rule 56(d) motion is deficient because the factual issues which it seeks to

explore through further discovery are either affirmatively established in the record or immaterial to its claim and, therefore, not essential to its opposition to Irvine's motion for summary judgment.

For the reasons explained in section III above, Irvine's motion for summary judgment establishes that it is entitled to judgment as a matter of law on Rocky Mountain's claim in the Complaint. Rocky Mountain has not, in any way, attacked the merits of Irvine's motion for summary judgment. Rocky Mountain's only response to Irvine's motion is its Rule 56(d) motion, which the Court finds deficient. Accordingly, Irvine is entitled to summary judgment on Rocky Mountain's claim in the Complaint.

## V. Rocky Mountain's Motion to Amend (1st Amended Complaint)

Rocky Mountain seeks leave to amend its Complaint to add factual allegations concerning (1) the emergency arbitration and (2) Irvine's actions taken pursuant to the Arbitration Order. Rocky Mountain's proposed amended complaint still alleges only a claim of intentional interference against Irvine. It also seeks a declaratory judgment concerning the contractual rights of all parties in all Agreements.

Irvine contends that Rocky Mountain's proposed amendments are futile, prejudicial, and exhibit an improper dilatory motive to stave off summary judgment. Irvine contends the proposed amendments are futile because the new facts alleged cannot support a claim for tortious interference, as Rocky Mountain still cannot prove that Irvine acted without right or justifiable cause.

 Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that motion for leave to amend a complaint should be given "freely ... when justice so requires." In exercising its discretion, a court can deny a motion for leave to amend for a number of reasons, including, undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "[A] court is to be guided by the underlying purpose of Fed.R.Civ.P. 15—to facilitate decision on the merits, rather than on the pleadings or technicalities." *McCarty Farms, Inc. v. Burlington N., Inc.*, 787 F.Supp. 937, 944 (D.Mont.1992). Courts are less inclined to grant a motion for leave to amend that is filed while a motion for summary judgment is pending. See *Felde v. City of San Jose*, 839 F.Supp. 708, 711 (N.D.Cal.1994). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight" in assessing a motion to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir.2003). However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995); see also *Gentala v. City of Tucson*, 213 F.3d 1055, 1061 (9th Cir.2000).

The Court has already discussed why Rocky Mountain's claim based on the letters it sent will not support a claim of tortious interference. To the extent that the proposed amended complaint is premised on the Equipment Agreement and Irvine's actions taken after Microbix rescinded the Equipment Agreement, the claim fails because at that point there was no agreement with which Irvine could interfere. See *Grenfell*, 56 P.3d at 336–338.

The allegation that Irvine entered into arbitration without giving notice to Rocky Mountain cannot support a claim for tortious interference. The record makes clear that the emergency arbitration proceedings were entered into pursuant to the Irvine–Microbix Agreement, and that

Rocky Mountain was not a party to the arbitration because it was not a party to the Irvine–Microbix Agreement. Indeed, Microbix sought to have Rocky Mountain joined as a party to the emergency arbitration, but the arbitrator expressly ruled that it could proceed with arbitration without Rocky Mountain. (Doc. 32–2 at 9–10.) Thus, the allegation that Irvine engaged in arbitration without giving notice to Rocky Mountain cannot support a claim for tortious interference because it is clear from the record that the emergency arbitration was entered into pursuant to valid contractual rights in furtherance of Irvine's legitimate business interests. See *Quinlivan*, 29 P.2d at 377–378; *Statewide Rent–A–Car*, 704 F.Supp. at 185–186.

The same reasoning applies to Rocky Mountain's claims based on the alleged "dismantl[ing]" of the Equipment. (Doc. 35–1 at 9.) The record makes clear that Irvine had the right to enter the Facility and dismantle the Equipment pursuant to the relief granted by the arbitrator in the Arbitration Order. (Doc. 32–2 at 15.) Irvine's enforcement of its legal rights cannot, as a matter of law, serve as the basis for a tortious interference claim. *Quinlivan*, 29 P.2d at 377–378; *Statewide Rent–A–Car*, 704 F.Supp. at 185–186.

The proposed Amended Complaint also makes a claim for declaratory judgment on the rights and legal relations of the parties in light of certain provisions of the Irvine–Microbix Agreement, and a declaration of rights with respect to the Equipment Agreement. Microbix is a party to both of these contracts. Microbix, however, has been dismissed from this action because the Court lacks personal jurisdiction over it. Clearly, Microbix is an indispensable party to any judgment purporting to declare rights in a contract to which it is a party. *See* Fed.R.Civ.P. 19(a)(1). A judgment rendered in Microbix's absence is very likely to prejudice both Microbix and

Irvine and/or result in potentially contradictory rulings. Thus, Rocky Mountain's claims for declaratory judgment must be dismissed. *See* Fed.R.Civ.P. 19(b)(1).

■ In sum, Rocky Mountain's motion to amend its complaint must be denied because the proposed amended complaint is futile and the *Foman* factors weigh against amendment. First, Rocky Mountain's motion to amend is brought while summary judgment in this case is pending. See *Felde*, 839 F.Supp. at 711. Second, all of Rocky Mountain's claims, as amended, are subject to immediate summary judgment and the amendment is therefore futile. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845. Granting Rocky Mountain leave to amend will unduly prejudice Irvine by forcing Irvine to continue litigating meritless claims against it. Allowing the amendment would also needlessly delay resolution of this case. Rocky Mountain's motion for leave to amend will be denied.

## VI. Motion to Amend to Add a Claim for Conversion

At the hearing on October 11, 2013, counsel for Rocky Mountain stated that its claim against Irvine may be best stated as a claim for conversion and that it would likely seek leave to amend to add a claim for conversion. Irvine responded that it believes such an amendment would be futile and prejudicial.

■ In addition to the factors described above, a Court may deny a motion to amend if it presents "no new facts but only new theories and [the party] provide[s] no satisfactory explanation for his failure to fully develop his contentions originally." *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir.1990)(internal quotation marks omitted); See also *Forces Action Project LLC v. California*, 61 Fed. Appx. 472 (9th Cir.2003).

In Montana, a claim for conversion must satisfy the following elements: "ownership of property, a right of possession, unauthorized dominion over that property by another, and resulting damages." *Eatinger v. Johnson* (1994), 269 Mont. 99, 104, 887 P.2d 231, 234 (1994). "Conversion is 'a distinct act of dominion wrongfully exerted over one's property in denial of, or inconsistent with, the owner's right." *Feller v. First Interstate Bancsystem, Inc.*, 369 Mont. 444, 299 P.3d 338, 343 (2013)(quoting *Bird v. Hiller*, 270 Mont. 467, 892 P.2d 931 (1995)). "Possession of personal property creates a rebuttable presumption of ownership." *Farmers State Bank of Victor v. Imperial Cattle Co.*, 218 Mont. 89, 708 P.2d 223, 227 (1985).

The Court finds that a motion to amend to assert a claim of conversion based on the facts currently alleged would be futile. Rocky Mountain did not have possession of the Equipment at the time of the alleged conversion. Microbix rescinded the Equipment Agreement on March 21, 2013, and has refused to allow Rocky Mountain access to the Facility housing the Equipment since that time.[5] Furthermore, Irvine's actions in dismantling, temporarily, the Equipment were taken pursuant to its legal rights under the Arbitration Order. Irvine was carrying out the relief granted by the order of the emergency arbitrator. Indeed, the Amended Complaint alleges as much: "Irvine Scientific … used the Secret Arbitration to gain access to the Facility and dismantle the Equipment." (Doc. 35–1 at 9.) A ruling from this Court that would deem this action tortious would subvert the arbitration process and impose contradictory rulings. Furthermore, the dismantling of the Equipment pursuant to the Arbitration Order is a form of temporary relief whereby neither Microbix nor Irvine is actively asserting dominion or control. Thus, the motion to amend to add a claim for conversion would be futile.

In addition, Rocky Mountain's motion to amend presents a new theory without alleging any new facts at a stage in the litigation where summary judgment is pending. Rocky Mountain provides no adequate explanation as to why it seeks to change its theory at this stage. It asserts only that the new theory occurred to it during the Court's hearing and that it believes the new theory is more appropriate. Its motion, therefore, is not well taken. *Allen*, 911 F.2d at 374. Moreover, given that Irvine's motion for summary judgment on Rocky Mountain tortious interference claim has been pending since June 2013, Rocky Mountain's motion to amend to add a new theory at this late stage is prejudicial to Irvine. *Felde*, 839 F.Supp. at 711. Accordingly, the motion to add a claim for conversion will be denied.

IT IS ORDERED that Irvine's motions (Docs. 24 and 32) are GRANTED. IT IS FURTHER ORDERED THAT Rocky Mountain's motions (Docs. 39 and 35) are DENIED. Rocky Mountain's motion to supplement the record (Doc. 47) is GRANTED. Judgment shall be entered in favor of Irvine. All deadlines are VACATED, and this case is CLOSED.

---

5. Rocky Mountain's motion to supplement the record provides evidence that Microbix is currently taking a litigation position in the related case in Canada in which it disclaims any ownership of the Equipment. While the Court grants the motion and considers this evidence, it makes no difference to the Court's analysis. Microbix's current litigation position fails to provide any proof that Rocky Mountain had possession of the Equipment at the time of Irvine's alleged conversion of the Equipment.